IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02132-RM-MEH

DEBRA CARROLL,

      Plaintiff,

v.

JEFFERSON COUNTY SHERIFF'S OFFICE,
CODY JANN, in his individual and official capacities,
THERESE S. GIST, in her individual and official capacities,
JEFFERSON COUNTY LIBRARY SYSTEM,
SHERYL DITTON, in her individual and official capacities,
EMILY KOLM, in her individual and official capacities,
CENTURA HEALTH CORPORATION d/b/a LITTLETON ADVENTIST HOSPITAL,
DEVIN C. BATEMAN, M.D., in his individual and official capacities,
TIMOTHY HIRSCH, P.A., in his individual and official capacities, and
JOHN AND JANE DOES 1-10,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Debra Carroll, proceeding pro se in this case ("Plaintiff"), has filed a second motion seeking leave to amend her claims. ECF 107. Defendants Timothy Hirsch, P.A. ("Hirsch"), Devin Bateman, M.D. ("Bateman"), and Littleton Adventist Hospital ("LAH") (collectively, "Medical Defendants") filed responses in opposition to the motion, in which they incorporate by reference their pending motions to dismiss to demonstrate the "futility" of certain amendments. For the following reasons, the Court recommends that the Honorable Raymond P. Moore grant in part and deny in part the Plaintiff's motion to amend, grant the Medical Defendants' motions to dismiss, and

deny without prejudice the motion to dismiss filed by the remaining named Defendants.[1]

## I.   Background

The Complaint in this case was filed on July 25, 2019.  ECF 1.  Defendants responded by filing a total of four Motions to Dismiss (in lieu of answers) in August and September 2019.  ECF 10, 14, 16, 29.  On November 12, 2019, the deadline for joinder of parties and amendment of pleadings, Plaintiff filed her original motion seeking leave to file a "First Amended Complaint," then with the Court's permission, re-filed the motion on November 20, 2019.  The Court granted the motion in part, but denied without prejudice (as "premature") Plaintiff's motion to add a request for exemplary damages.  The operative First Amended Complaint was filed the same day.  In response, Defendants again filed four Motions to Dismiss in lieu of answers in mid-December 2019.  ECF 89, 92, 93, 94.  Plaintiff filed the present motion seeking leave to file a Second Amended Complaint on February 18, 2020, just after filing responses to the pending motions to dismiss.

In this action, Plaintiff alleges generally that Defendants violated her rights to due process and equal protection, and unlawfully arrested and detained her, in response to an assault against the Plaintiff at a public library in Jefferson County on July 29, 2017.  *See* Am. Compl., ECF 82.  In the present motion to amend, Plaintiff notes that Defendants' pending motions to dismiss all argue that

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court.  *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

the operative pleading is verbose, rambling, disjointed, conclusory, unwieldy, and replete with "an exhaustive recitation of statutes and administrative rules." She contends that she is "appreciative of opposing counsel's comments" and "intends to address these concerns in her Second Amended Complaint." Plaintiff asserts that she "recognizes the lumping together of Defendants" and "believes that she can improve readability and organizational issues which include repetition[] and verbosity."

Citing opinions from Colorado appellate courts, Defendant Hirsch counters that Plaintiff's amendments are untimely, unduly prejudicial, and futile, since her amendments fail to state plausible claims for relief against Hirsch. Defendant Bateman similarly argues that Plaintiff's amendments are unduly delayed, prejudicial, and futile, particularly because the Plaintiff has not and "cannot" plausibly allege that Bateman is a state actor and Plaintiff failed to submit a Certificate of Review in accordance with the applicable Colorado statute. Defendant LAH responded contending that it, too, is not a state actor, and the proposed amendments would not survive a motion to dismiss. These Defendants incorporate by reference their pending motions to dismiss.

Plaintiff replies that good cause exists for her amendments which "clarify" the "insufficiencies" in her First Amended Complaint, some of which are derived from "new evidence" she "received from a third party." She further contends that, in response to arguments that Hirsch and Bateman are not employees of the hospital, she seeks to add the hospital's chief executive officer, Jillyan McKinney, as a Defendant. Plaintiff also asserts that she has determined to drop Emily Kolm and Therese Gist as Defendants. Plaintiff states that she has been diligent in seeking and obtaining (despite the stay of discovery in this case) documents related to the incidents at issue, and that additional discovery (when the stay is lifted) will support her claims. She also argues that the discovery stay ensures that no party will suffer prejudice with a grant of her amendments.

## II.     Legal Standards

Adjudication of the Plaintiff's motion to amend will require review and consideration of the Medical Defendants' motions to dismiss.  Accordingly, the Court will examine and apply the following legal standards for these pending motions.

### A.     Motion to Amend

Depending on the date filed, Plaintiff's motion may necessitate an amendment of the Scheduling Order under Fed. R. Civ. P. 16(b), which would require that Plaintiff show good cause. Fed. R. Civ. P. 16(b)(4); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) ("This Circuit adopted a similar interpretation of Rule 16(b)'s 'good cause' requirement in the context of counterclaims asserted after the scheduling order deadline." (citing *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518–19 (10th Cir. 1990))).  Here, the Scheduling Order provides that the deadline for the parties to amend the pleadings was November 12, 2019 (ECF 48 at 15), but that deadline was extended to November 20, 2019 (ECF 77).  The current motion was filed on February 18, 2020.  Because Plaintiff seeks leave to amend the First Amended Complaint after the Scheduling Order's deadline for amendment of pleadings, the motion implicates both Rules 15 and 16.

Rule 16 dictates that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.

> Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.

*Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997)). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240. However, "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1200 (D. Colo. 2017). "To demonstrate good cause pursuant to Rule 16, the moving party must . . . 'provide an adequate explanation for any delay.'" *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014) (quoting *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009)); *D.R. Horton, Inc.-Denver v. Travelers Indem. Co. of Am.*, 281 F.R.D. 627, 630 (D. Colo. 2012). Further, a court may consider the procedural posture of a case in a Rule 16(b) "good cause" analysis. *See Nicastle v. Adams Cty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011), *rec. adopted*, 2011 WL 1464588 (D. Colo. Apr. 18, 2011).

Rule 15 states that after the deadline for amending a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of an opportunity to amend is within the discretion of the Court, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or futility of amendment." *Id.* (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Prejudice in this context arises when the amendment unfairly affects the opposing party "'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). Prejudice occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.*

B.   Motions to Dismiss

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

C.     Treatment of a Pro Se Plaintiff's Pleading

The Supreme Court has directed courts to hold pro se litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Tatten v. City & Cty. of Denver*, 730 F. App'x 620, 623 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 826, 202 L. Ed. 2d 579 (2019) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Tenth Circuit interpreted the *Haines* rule to mean "that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could

prevail, it should do so." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991)).

"This liberal-construction rule does not, however, relieve a pro se plaintiff of his burden to present sufficient facts to state a legally cognizable claim, nor will the court act as his advocate and make his arguments for him." *Id.* at 624.  Accordingly, the court must "not supply additional facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  In addition, the Tenth Circuit instructs that courts must "hold pro se litigants to the requirements of the Federal Rules." *Clark v. Time, Inc.*, 727 F. App'x 975, 978 (10th Cir. 2018).

## III. Analysis

Plaintiff argues that she has not only demonstrated good cause for an amendment of the November 20, 2019 deadline to join parties and amend her pleading, but also shown that her proposed amendments are not delayed, unduly prejudicial, nor futile.

### A. Good Cause Pursuant to Rule 16

Considering her pro se status and the circumstances of this case, the Court finds the Plaintiff has provided an adequate explanation for the three-month delay of her proposed amendments.  First, she states that she has learned "new" information, not only on her own but also from the pending motions to dismiss.  As stated in its previous order, the Court finds instructive here the Advisory Committee's comments concerning the 2009 Amendments to Rule 15: "This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the [Rule 12] motion. A responsive motion may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim." Fed. R. Civ. P. 15 advisory committee's note, 2009 Amendments.  While the note focuses on the rule's allowance of amendment once as a matter of course, the committee specifically

emphasizes the importance of allowing amendment to frame the issues to be decided and to correct deficiencies in the pleading, which may be raised by a Rule 12 motion.

Thus, it is not necessarily improper to amend a pleading pursuant to Rule 15 to correct deficiencies in the pleading that are raised in a Rule 12 motion.  Proposed amendments that seek to clarify or explain facts asserted in an original counterclaim, or to add additional factual allegations concerning a claim's required elements, are proper and the Court perceives no bad faith on the part of the Plaintiff in seeking to correct pleading defects raised in the Defendants' pending motion to dismiss.  However, the Court reminds Plaintiff again of the Tenth Circuit's admonition against allowing pleadings to become "moving targets."  *See Minter*, 451 F.3d at 1206 ("[c]ourts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target.'") (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998)).  The Court will be less inclined to grant leave if asked to review any further amendments seeking to "clarify" or "explain."

In addition, this is Plaintiff's second request for leave to amend; she explains that she has (despite the discovery stay) endeavored to learn as much about the incidents as possible and to glean "relevant" information from documents available to her.  While the Court does not pass (at this stage of the analysis) on whether Plaintiff's new information is relevant to her allegations,[2] it recognizes Plaintiff's diligence in attempting to "properly" frame her claims against Defendants.  Therefore,

---

[2] The Court notes Plaintiff's "new" allegations in paragraph 4 of the proposed Second Amended Complaint.  *See* ECF 107-1. Plaintiff alleges Bateman was "a Defendant in 2009 in a similar case," in which the plaintiff alleged she was detained without probable cause; Plaintiff here asserts that "Bateman's badgering tactics [in the 2009 case] were like those he employed with Plaintiff on July 29, 2017."  SAC, ¶ 4.  This Court notes that Fed. R. Evid. 404(b) prohibits the use of evidence of an act to prove a person's character to show that on a particular occasion the person acted in accordance with the character.  Nevertheless, unlike other documents and evidence attached to the motion and pleadings, Plaintiff did not provide, and the Court was unable to locate, a copy of the case, to which Plaintiff refers as "*Reed v. Arapahoe County Sheriff's Office et al.*"

the Court concludes that Plaintiff meets her burden to demonstrate good cause to amend the deadline for joinder of parties and amendment of pleadings to February 18, 2020.[3]

      B.      <u>Undue Delay, Prejudice, or Futility Pursuant to Rule 15</u>

In finding good cause for most amendments, the Court has determined that Plaintiff's motion is not unduly delayed. Moreover, the Court finds that Plaintiff's amendments are not unduly prejudicial. Here, the Court perceives no prejudice resulting from the requested amendments particularly where, as here, discovery is stayed, no trial date has been set, and the Court may extend discovery deadlines and pretrial conference dates as necessary. Defendants' stated concerns that they will be required to file a third round of responses to the operative pleading is not persuasive; Defendants are represented by capable counsel, and the availability of electronic drafting and filing make any necessary revisions to existing responses less demanding.

As for whether the amendments are futile, "[p]roposed amendments are futile when the amended complaint 'would be subject to dismissal for any reason.'" *Cheavens v. Public Serv. Corp. of Colo.*, 176 F. Supp. 3d 1088, 1101 (D. Colo. 2016) (quoting *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001)). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Id.* (citing *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999)). Thus, the Court will analyze the motions filed by the Medical Defendants seeking dismissal of Plaintiff's claims alleged in the operative pleading, then determine whether Plaintiff's proposed amendments "would be subject to dismissal."

---

[3]This finding does not necessarily govern Plaintiff's proposed new claim for outrageous conduct against all Defendants, which the Court will analyze below.

1.    *Hirsch's Motion to Dismiss*

Taking the allegations as true in the operative First Amended Complaint ("FAC"),[4] Plaintiff asserts she is a resident of the State of Colorado and a 33-year veteran teacher of the Jefferson County School System, having taught middle and high school language arts from 1978 to 2004, and having been promoted to instructional coach from 2004 to 2010.  She has Bachelor of Arts degrees in Psychology and English and a Master's Degree in Public Administration, and she holds licenses in Secondary Teaching and School Administration.  For one-and-one-half years prior to this litigation, Plaintiff has been employed as a respite caregiver for disabled children.  Plaintiff also has been, and continues to be, a court-appointed child visitation supervisor who has insured the safety and welfare of the children she has supervised for several years.

Plaintiff has never, at any time, shown any homicidal or violent behavior toward anyone, nor was anyone in imminent danger during the subject incidents on July 29, 2017.  Plaintiff has no history of suicidal  ideation, suicidal attempts, or criminal conduct.  She had never been admitted to any psychiatric ward or facility before or after the subject detention at LAH on July 29, 2017.

Plaintiff alleges that Defendant Hirsch was a physician's assistant, who reported to Defendant Bateman, a medical doctor, at the relevant time.  Hirsch performed "intake" on the Plaintiff when she arrived at LAH on July 29, 2017.  Plaintiff alleges that, although a bruise on her cheek, scratches on her neck, and abrasions and contusions on her right leg were visible to Hirsch, he did not note them; rather, Hirsch's report states that Plaintiff "[d]enies any current injuries or acute medical concerns."  Hirsch did not inquire about these and other injuries, such as bruises on

---

[4]Plaintiff attached to the FAC copies of various police and medical records, to which she refers throughout the pleading.  "Documents [attached to or] outside of the complaint may be considered [in a Rule 12(b)(6) analysis] when they are referred to in the complaint if the documents are central to the plaintiff's claim or are matters of which a court may take judicial notice."  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citation and internal quotation marks omitted); *see also Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

Plaintiff's right shoulder and wrists, but noted her distress.  Hirsch noted that Plaintiff "presented with a chief complaint" of "[p]sychiatric [e]valuation," but Plaintiff did not voluntarily complain or present to Hirsch.  Hirsch denied Plaintiff's request to make a telephone call but did not explain why and failed to notify her of her rights as a patient and "right to retain and consult with her attorney."  He noted that Plaintiff presented with "Agitation: Patient was placed on mental health hold by police"; Plaintiff alleges "agitation" was the only reason given for the hold and for treatment.  Hirsch mentioned nothing in his report regarding physical manifestations of agitation, aggressive body movements, or personal space violations; rather, he described Plaintiff as "Calm-Awake."  Plaintiff asserts that Hirsch ignored her statements that she had been assaulted by a stranger; she was the person who contacted 911; a police officer knocked her to the ground and another officer handcuffed her; and she did not consent to any treatment.

Plaintiff explained to Hirsch the subject matter of her political statements (regarding child trafficking) when describing what happened at a Douglas County public library prior to her transport to the hospital; Hirsch reported that Plaintiff was "angry," "blunt," "agitated," and "aggressive," but also that she was "communicative," her cognition and memory were "normal," and she "expressed no homicidal or suicidal ideation."  He also apparently recorded Plaintiff on a "voice-recognition device," but the recording was distorted;[5] in addition, Plaintiff contends that medical records reflect she was "on video surveillance for continuous monitoring by security," but the video and audio recordings "have been destroyed" despite Plaintiff notifying Hirsch that she intended to sue the hospital.

Plaintiff alleges violations of her rights under the Fourth, Fifth, and Fourteenth Amendments,

---

[5]Notably, the medical records indicate that the healthcare providers used "speech recognition software" to create their notes and "therefore, [the record] may contain errors or omissions related to that software."  ECF 83-1 at 5, 7.

saying Hirsch denied her right to equal protection, improperly detained her, falsified and/or destroyed records, and conducted an illegal search when he ordered blood and urine tests. Plaintiff also asserts that Hirsch engaged in spoliation of evidence and violated her right to due process. She avers that Hirsch conspired with Bateman and the Jefferson County Defendants in violation of both federal statutory and state common law to deprive Plaintiff of her rights by adopting the law enforcement officers' version of the incident at the library.

Hirsch seeks dismissal arguing that Plaintiff fails to comply with Fed R. Civ. P. 8 and fails to plead conduct by Hirsch that rises to the level of a "state actor" for purposes of her constitutional claims against him. Further, Hirsch contends that, to the extent her claims may be construed as asserting medical negligence, Plaintiff failed to file a Certificate of Review pursuant to Colo. Rev. Stat. § 13-20-602, *et seq*. Finally, Hirsch asserts that the Court should refuse to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff counters that she has pled sufficient facts demonstrating that Hirsch is "fairly said to be a state actor" under prevailing law, and points not only to her allegations, but also to copies of records attached to the FAC. Concerning the Certificate of Review, Plaintiff concedes that she has not filed one in this case stating that "[e]very medical professional she has approached has refused to get involved." Resp. 13.

The seizure of a person for an emergency mental health evaluation is a restriction on the fundamental right of personal liberty and is governed by the reasonableness requirement of the Fourth Amendment. *Meyer v. Bd. of Cty. Comm'rs of Harper Cty., Okla.*, 482 F.3d 1232, 1239 (10th Cir. 2007) (citing *Pino v. Higgs*, 75 F.3d 1461, 1468 (10th Cir. 1996)). Probable cause is required to support an emergency detention for a psychiatric evaluation. *Id.* "Probable cause in this context means cause to believe that the individual poses a danger to himself or others." *Id.*; *see also Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000) ("[A] state official is not entitled to qualified

immunity if 'there is a genuine issue of material fact concerning whether a reasonable person, exercising professional judgment and possessing the information before the defendant, would have believed that [an individual was a danger to himself or others].'") (quoting *Walters v. Western State Hosp.*, 864 F.2d 695, 699 (10th Cir. 1988)).

Before a court analyzes whether an individual has violated another's constitutional right, the court must determine whether the individual was acting under color of state law pursuant to 42 U.S.C. § 1983. "To hold a private individual liable under § 1983 for a constitutional violation requiring state action, a plaintiff must show . . . that the individual's conduct is 'fairly attributable to the State.'" *Pino*, 75 F.3d at 1465 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "'[M]erely private conduct, no matter how discriminatory or wrongful,' cannot provide the grounds for a claim brought under § 1983." *Reinhardt v. Kopcow*, 65 F. Supp. 3d 1164, 1171 (D. Colo. 2014) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

The Supreme Court has emphasized that an inquiry into whether conduct constitutes "state action" is necessarily fact-intensive. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).[6] The Tenth Circuit has identified four tests under which courts may determine that a private actor is held accountable as a state actor for a constitutional deprivation: (1) the "nexus test," (2) the "public function test," (3) the "joint action test," and (4) the "symbiotic relationship test." *Reinhardt*, 65 F. Supp. 3d at 1171 (citing *Wittner v. Banner Health*, 720 F.3d 770,

---

[6]Although the *Brentwood* Court analyzed whether alleged conduct constituted state action under the Due Process Clause of the Fourteenth Amendment, courts applying the "under color of state law" requirement have often looked to case law interpreting the Fourteenth Amendment's state action requirement for guidance, and vice versa. *See, e.g., Sullivan*, 526 U.S. at 49 n.8 (where deprivations of rights under the Fourteenth Amendment are alleged by way of a § 1983 action, the requirements of "state action" and "under color of state law" converge); *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982) (noting that "[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'").

775 (10th Cir. 2013)).  The Court will discuss each of these tests in turn.

First, the Court must identify the conduct alleged to have violated Plaintiff's constitutional rights.  *Sullivan*, 526 U.S. at 50.  Plaintiff contends that Hirsch unlawfully seized her when he detained her at the hospital, conducted an unlawful search by ordering blood and urine tests, and violated her rights to equal protection and due process by falsifying and/or destroying evidence.  The first "nexus" (or, "compulsion") test asks "whether the challenged activity results from the State's exercise of coercive power."  *Wittner*, 720 F.3d at 775 (citation and quotation marks omitted).  In *Wittner*, the Tenth Circuit found that Colorado law concerning the detention of individuals for mental health evaluation and treatment, Colo. Rev. Stat. § 27-65-105(4), does not mandate detention but, rather, permits a facility to detain the person "for a period not to exceed seventy-two hours."  *Id.* at 776.  Accordingly, "Colorado has no ability to force, compel, or even encourage a private facility to admit anyone."  *Id.*  The Tenth Circuit concluded that "[w]ithout more . . . a statutory grant of authority for a short-term involuntary hold in a private hospital does not pass the nexus/compulsion test for turning private action of the hospital or the certifying doctor into state action."  *Id.*

Here, Plaintiff's allegations provide nothing "more" as required by *Wittner*; Plaintiff does not allege that Hirsch was coerced, ordered, or compelled by any state actor, including the law enforcement officers, to detain her for the five hours she remained at LAH.  Hirsch's intake notes explaining the history of her case, including that the police brought her in for a mental health hold, are insufficient themselves to demonstrate coercion by state officials.  Any allegation that "Hirsch called Plaintiff 'delusional' because . . . he was 'compelled by state officials' Jann and Gist to corroborate the flawed version of [Jefferson County] actors" (FAC ¶ 246) is merely conclusory; Plaintiff alleges no facts demonstrating how Hirsch was compelled or coerced by the sheriff's

deputies to find her "thought content" to be "delusional." *See* ECF 83-1 at 8.

The second "public function" test "asks whether the challenged action is a traditional and exclusive function of the state." *Wittner*, 720 F.3d at 777. The Tenth Circuit has rejected the view that involuntary commitment of the mentally ill is a public function. *Id.* Plaintiff alleges no facts that would persuade this Court to find she has stated a plausible claim under the public function test. The same is true with respect to the "symbiotic relationship" test, which asks "whether and to what extent the state's relationship with the private actor goes beyond the 'mere private [purchase] of contract services.'" *Id.* at 778 (citation omitted). Although Plaintiff summarily argues that Hirsch was "entwined" with the sheriff's deputies, she alleges no facts indicating that Hirsch had any relationship with state officials, much less a symbiotic one. *See id.* ("a public-private relationship can transcend that of mere client and contractor if the private and public actors have sufficiently commingled their responsibilities.").

The final "joint action" test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 777 (quoting *Gallagher*, 49 F.3d at 1453). Plaintiff alleges that Hirsch effectively acted in concert with Defendant Deputy Jann by incorporating Jann's report into his own notes. *See* FAC ¶¶ 266-268. She attached to the FAC copies of a report by Deputy Gist (ECF 82-2 at 36) and the third page of a report by Deputy Jann (*id.* at 37). While it appears that Hirsch did, in fact, incorporate Jann's statements into his report, the statements are incorporated into the "History of Present Illness" portion of Hirsch's report, in which he explains what was reported to him by the police. *See* ECF 83-1 at 5 ("Per police, she became aggressive with them . . . ."). As for Hirsch's own findings, he noted during his physical examination of the Plaintiff that her affect was "angry" and "blunt"; her speech was "rapid and/or pressured and tangential," but "not delayed" and "not slurred"; she was "agitated" and "aggressive";

and, her thought content was "delusional." FAC ¶ 254; *see also* ECF 83-1 at 8. Plaintiff's allegation that Hirsch based these findings on information provided him by Deputies Jann and Gist (FAC ¶ 256) is conclusory and not supported by the attached documents. While the deputies' reports describe Plaintiff—at the library before she arrived at LAH—as "yelling," "uncooperative," and "having imaginary conversations . . . on her cell phone" (ECF 82-2 at 36, 37), there is nothing in the reports or in Plaintiff's allegations or other records indicating that Hirsch based his examination on the deputies' reports rather than his own findings. In fact, another provider present with Plaintiff at LAH, Kelly L. Corbin, RN, noted that Plaintiff was "talking non-stop and is not easily de-escalated." ECF 83-1 at 9. Moreover, Plaintiff alleges "[i]t is unclear whether Hirsch had Jann's report in his possession at the time Hirsch wrote his report." FAC ¶ 267. The Court finds Plaintiff's allegations are insufficient to demonstrate a plausible claim that Hirsch acted jointly with Deputy Jann and/or Deputy Gist when he treated Plaintiff at LAH. *See Wakeland v. Montano*, 203 F.3d 836 (Table), 2000 WL 94006, at \*4 (10th Cir. Jan. 28, 2000) (citing *Pino*, 75 F.3d at 1466-67) (allegations of cooperation with state authorities and certification for involuntary commitment under state law are insufficient to qualify private health care providers as state actors).

Plaintiff's allegations in her proposed Second Amended Complaint ("SAC") provide no additional information by which the Court might find Plaintiff plausibly avers Hirsch acted under color of state law; the allegations are similar and, in some respects, identical to those made in the FAC. *See* SAC ¶¶ 94-113; 189-202. Accordingly, the Court respectfully recommends that Judge Moore find Plaintiff has failed to plausibly state that Hirsch acted under color of state law pursuant to 42 U.S.C. § 1983 and, therefore, deny Plaintiff's motion for leave to assert (as futile) the first (First Amendment violations), third (Fourteenth Amendment due process and spoliation/right to privacy violations), and fourth (Fourth Amendment violations) claims against Hirsch that are

asserted in her SAC, and grant Hirsch's motion to dismiss Plaintiff's fourth (Fifth and Fourteenth Amendment due process and spoliation/right to privacy violations)[7] and fifth (Fourth Amendment violations) claims against Hirsch asserted in the FAC.

With respect to Plaintiff's first claim pursuant to 42 U.S.C. § 1985[8] in the FAC, Hirsch argues that Plaintiff fails to plausibly state any agreement among the Defendants or that the alleged conspiracy was "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Mot. 13. Plaintiff does not respond to this argument. The Court agrees that Plaintiff's FAC fails to allege any racial or other class-based discrimination.

Although not specific, it appears that Plaintiff brings her claim under § 1985(3), but construed liberally, her allegations also may implicate § 1985(2). Regarding these provisions, the Tenth Circuit has found:

> The relevant portion of § 1985(2) provides a right of action "if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws." 42 U.S.C. § 1985(2). Section 1985(3), clause 1, provides a right of action "[i]f two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3).

> Among other elements, both causes of action require a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th

---

[7]As the Tenth Circuit has made clear: "There are two constitutional sources of due process rights, the Fifth Amendment and the Fourteenth Amendment. Plaintiffs pursuing procedural due process claims based on actions by the federal government must proceed under the Fifth Amendment, while plaintiffs bringing such claims based on actions by state governments must proceed under the Fourteenth Amendment." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 (10th Cir. 2020). Here, Plaintiff makes no claims nor alleges unlawful conduct against a federal entity or official.

[8]"State action or color of state law is not essential to a claim under 42 U.S.C. Section 1985(3)." *Taylor v. Nichols*, 558 F.2d 561, 567 (10th Cir. 1977) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 96-101 (1971)).

Cir. 1995); *Smith v. Yellow Freight Sys., Inc.*, 536 F.2d 1320, 1323 (10th Cir. 1976). The focus of the racial animus inquiry is the government actor's "intent, motive, or purpose." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 647 (10th Cir. 1988). To avoid summary judgment, Plaintiffs must point to "specific, nonconclusory evidence" that the Defendants' actions were "improperly motivated." *Id.* at 650.

*Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015). Here, Plaintiff must allege facts demonstrating that Hirsch and the other Defendants were motivated by racial or other class-based discrimination; however, the FAC contains no such allegations and the claim itself does not mention the Defendants' motivation. *See* FAC ¶¶ 736-740. Furthermore, the proposed SAC alleges a claim for "conspiracy to deprive Plaintiff of her First Amendment rights" against Hirsch. SAC, ECF 107-1 at 63. Plaintiff alleges no race-based motivation; rather, she asserts that the Medical Defendants engaged in the alleged conduct "to access funding for public safety and to generate business for LAH." *Id.* at 64. But, "[t]he other 'class-based animus' language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837 (1983)). Notably, the Tenth Circuit has rejected a § 1985 claim based on a denial of First Amendment rights where the Plaintiff failed to allege race or other class-based animus. *See Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994). Thus, the Court recommends that Judge Moore find Plaintiff has failed to plausibly state a claim pursuant to 42 U.S.C. § 1985 and, therefore, deny Plaintiff's motion for leave to file as futile the seventh claim against Hirsch that is asserted in the SAC, and grant Hirsch's motion to dismiss Plaintiff's first claim against Hirsch asserted in the FAC.

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Kinney v. Blue Dot Servs. of Kan.*, 505 F. App'x 812, 815 (10th Cir. 2012) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149

F.3d 1151, 1156 (10th Cir. 1998)).  Plaintiff's seventh claim in the FAC alleges civil conspiracy (presumably under state law) against all Defendants, including Hirsch. This is the only state law claim brought against Hirsch in the FAC.  *See Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1230 (10th Cir. 2015) (because the district court correctly dismissed the federal claims, it did not abuse its discretion in declining supplemental jurisdiction over the state-law claims) (citing 28 U.S.C. § 1367 (c)(3)).  Therefore, this Court recommends that Judge Moore grant Hirsch's motion to dismiss (without prejudice) Plaintiff's seventh claim asserted in the FAC.

Finally, the Court recommends that Judge Moore find neither the FAC nor the SAC alleges claims for medical negligence against Hirsch, for which state law typically requires the filing of a Certificate of Review.  In Colorado, "[a] medical malpractice action is a particular type of negligence action."  *Day v. Johnson*, 255 P.3d 1064, 1068 (Colo. 2011) (citing *Greenberg v. Perkins*, 845 P.2d 530, 534 (Colo. 1993)).  "Like other negligence actions, the plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury." *Id.* at 1068-69.  In this case, the Plaintiff does not allege that Hirsch breached a duty of care owed to her from which she suffered the injuries for which she seeks recovery here.  For example, Plaintiff does not allege that Hirsch's failure to acknowledge (or treat) her physical injuries resulted in damages for which she seeks recovery in this litigation.  Thus, this Court recommends Judge Moore find he need not accept Hirsch's invitation to dismiss any "medical negligence" claims against Hirsch.

## 2.     *Bateman's Motion to Dismiss*

Taking the allegations as true in the FAC, Plaintiff alleges that Bateman is a medical doctor who examined her in the emergency room at LAH on July 29, 2017, one-and-one-half hours after her arrival.  Bateman decided to extend the mental health hold and ordered a PEPS evaluation of the

Plaintiff.  Bateman's notes of the examination contain misspellings and unintelligible sentences, omit any recognition of visible bruises on Plaintiff's right cheek, right shoulder, and both wrists, and visible lacerations and contusions to her neck and right knee, and omit all references to Plaintiff's report of the police's "assault" on her.  Bateman's examination was performed in the presence of four medical staff, including Hirsch and Nurse Corbin.  Bateman did not ask Plaintiff about her injuries, and noted that Plaintiff was "not injured or involved in any notable altercation."  Bateman also ignored Plaintiff's statements that she herself called 911, then was knocked to the ground by Deputy Jann, handcuffed by Deputy Gist, and transported to LAH; she was fearful and understood being in custody of the state; and, she engaged in a conversation with Bateman about studying and speaking French.  Bateman repeatedly attempted to convince Plaintiff to undergo a "brain scan" and ordered that she take sedatives, but she refused.  Plaintiff did, however, submit to urine and blood tests "under threat" of being held for seventy-two hours.  Bateman noted incorrectly that Plaintiff used marijuana daily, and the toxicology report reflects none detected in her blood and urine on July 29, 2017.  Plaintiff tried to correct Bateman as he spoke into his "voice-recognition device," but he "over spoke her and asked if the marijuana was different from her usual."  Plaintiff was released at 5:30 p.m. to leave with her son, Jeffrey Carroll.

Like Hirsch, Bateman argues that Plaintiff fails to plausibly state he acted under color of state law and that her claims are improperly supported by conclusory statements constituting mere speculation.[9]  Further, Bateman contends that Plaintiff failed to file the requisite Certificate of Review if the Court construes the FAC as asserting a claim for medical negligence.

---

[9]Bateman improperly argues that Plaintiff's fourth claim seeks relief for a violation of the *Fourth* Amendment for Bateman's alleged spoliation of evidence and invasion of privacy; however, the claim is couched as, and alleges, *Fifth* (and Fourteenth) Amendment due process violations.  *See* FAC, ECF 82 at 79.  Nevertheless, the Plaintiff must state plausible allegations supporting her claim that Bateman acted under color of state law for both constitutional violations.

Plaintiff counters that "Bateman 'clothed himself under authority of state law' when he continued to hold Plaintiff in custody after she informed him that the process by which she had been taken into custody was unlawful."  Resp. at 3.  She also contends that "Bateman acted in parallel conduct and joint action with law enforcement by relying on law enforcement notes and not on personal observations of Plaintiff" and "Bateman was aligning his reports with the reports of Jann whose intention was to exculpate himself for [a] violent, aggressive, and capricious assault on Plaintiff."  *Id.* at 3-4.  Plaintiff asserts that "[a] finding of entwinement between hospital policy and its personnel with law enforcement will advance the case at bar" arguing "there is significant state funding and regulation of Centura Health and its employees."  Resp. at 8.  Finally, Plaintiff contends that Deputy Jann stayed at the hospital for approximately thirty minutes after escorting her there and, during that time, "[i]t is not implausible that Bateman had a meeting of the minds . . . where Jann told Bateman about [the library incident]" and "[i]t is plausible that Bateman received direction from Jann when he passed his authority along to Bateman as well."  Resp. at 16-17.

The Court will begin by addressing whether Plaintiff's allegations plausibly state that Bateman acted under color of state law.  Applying the four tests from *Wittner*, the Court finds they do not.

First, under the "nexus/compulsion" (*Wittner*, 720 F.3d at 775-76), Plaintiff must allege more than that Colo. Rev. Stat. § 27-65-105(4) provided Bateman authority to detain her.  Plaintiff's allegations fail in this regard; she makes only conclusory arguments that Bateman "clothed himself" under state authority, and her reference to *Wilkins v. Dereyes*, 528 F.3d 790 (10th Cir. 2008) is inapposite.  The *Wilkins* court did not address whether the defendant(s) acted under color of state law pursuant to 42 U.S.C. § 1983; rather, the court confirmed that "a Fourth Amendment violation can exist only when a plaintiff alleges the legal process itself to be wrongful. If a plaintiff challenges

merely the confinement *after* the institution of legal process, but not the process itself, '[t]he protections offered by the Fourth Amendment do not apply.'" *Id.* at 798 (quoting *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)). Nothing in *Wilkins* assists the Plaintiff in the requirement to allege plausibly that the government, including the law enforcement officers, coerced, ordered, or compelled Bateman to detain her.

Plaintiff's allegations under the second and fourth tests fail as well. Again, Plaintiff alleges no facts that would persuade this Court to find she has stated a plausible claim under the second "public function" test (*see Wittner*, 720 F.3d at 777), and her conclusory statement that "there is significant state funding and regulation of Centura Health and its employees" is insufficient to satisfy the fourth "symbiotic relationship" test, which asks "whether and to what extent the state's relationship with the private actor goes beyond the 'mere private [purchase] of contract services'" (*id.* at 778). Moreover, none of Plaintiff's allegations establish a plausibility that Bateman and the Deputies "commingled their responsibilities." *Id.*

Finally, for the "joint action" test, Plaintiff relies on her allegations that Bateman simply parroted Deputy Jann's report to justify holding her at the hospital for five hours. However, a comparison of the deputies' reports (ECF 82-2 at 36-37) with Bateman's (ECF 83-1 at 10-11, 82-2 at 65) reflects no similarities. The Court agrees that Bateman's "history" portion of the report contains misspellings and unintelligible statements, but these errors are likely the result of the voice-recognition software used at the time. *See* ECF 82-2 at 65. The remainder of his report reflects Plaintiff's answers to his questions and findings from his examination. Furthermore, Plaintiff's contention that "it is plausible" Bateman and Jann met and spoke at the hospital after Jann escorted Plaintiff to the emergency room appears to be based on nothing more than mere speculation. According to Jann's report, he arrived at the hospital with Plaintiff "at about 1222 hours" and

departed "at about 1256 hours" (ECF 82-2 at 37), but neither Plaintiff's factual allegations nor the attached records reflect any indication that Bateman met and/or spoke with Jann. Even if the two spoke, however, no allegation or record indicates they acted in concert. The Court finds nothing in Plaintiff's allegations or the attached records demonstrating a plausibility that Bateman acted jointly with Deputies Jann and/or Gist.[10]

Plaintiff's allegations in the proposed SAC concerning Bateman provide no additional information by which the Court might find Plaintiff plausibly alleges Bateman acted under color of state law; the allegations are similar and, in some respects, identical to those made in the FAC. *See* SAC ¶¶ 115-145; 210-224. The only additional "fact" asserted in the SAC that may be relevant to this question is that Bateman allegedly stated in his report, "Patient should probably not make her speech at the library." *Id.* ¶ 225. Plaintiff cites Bateman's report at "Exhibit T" (*id.*); however, the report actually states:

> The mental provider obtained corroborating information from family . . . . They confirm that the patient has become very clinically active since retiring as a teacher. So, while she may have been very passionate about her cause today, doing so in the library may not have been the best place based on the reaction of those present, and prompted police evaluation, a concern for psychosis and, consequently, a trip to the emergency department. She will follow up with the Kaiser physicians and psychiatry as needed. Will be discharged to care of family, who are very comfortable with this plan. She will need a follow-up on her thyroid. In short, she does not appear to be acutely psychotic and there is not evidence of an acute psychiatric disorder, although follow-up would be a perfect safety net for a formal follow-up evaluation.

ECF 107-3 at 38. Again, the Court finds nothing in this paragraph demonstrates that Bateman acted together with the deputies to deprive Plaintiff of her constitutional rights.

Accordingly, the Court respectfully recommends that Judge Moore find Plaintiff has failed

---

[10]Plaintiff asserts repeatedly that the Defendants' "destruction of video and voice recordings" has hampered her ability to "provide further factual enhancement" (Resp. at 9); however, she never explains how her inability is relevant or what information the recordings contain that would assist in demonstrating the Medical Defendants acted under color of state law.

to plausibly state that Bateman acted under color of state law pursuant to 42 U.S.C. § 1983 and, therefore, deny Plaintiff's motion for leave to file (as futile) the first (First Amendment violations), third (Fourteenth Amendment due process and spoliation/right to privacy violations), and fourth (Fourth Amendment violations) claims against Bateman that are asserted in her SAC, and grant Bateman's motion to dismiss Plaintiff's fourth (Fourteenth Amendment due process and spoliation/right to privacy violations) and fifth (Fourth Amendment violations) claims against Bateman asserted in the FAC.

Moreover, for the first claim in the FAC alleging a violation of 42 U.S.C. § 1985, the Court finds the same rationale for dismissing the claim against Bateman as that justifying dismissal of the claim against Hirsch: Plaintiff fails to allege any racial or other class-based discrimination.  In addition, as set forth above, Plaintiff fails to state a plausibility that Bateman engaged in an agreement and concerted action with the other Defendants to deprive Plaintiff of her equal protection rights. *See Jones,* 809 F.3d at 578.

Furthermore, the proposed SAC alleges a claim against all Defendants, including Bateman, for "conspiracy to deprive Plaintiff of her First Amendment rights" against Bateman.  SAC, ECF 107-1 at 63.  Again, Plaintiff alleges no race-based motivation; rather, she asserts that Medical Defendants engaged in the alleged conduct "to access funding for public safety and to generate business for LAH" (*id.* at 64).  However, "[t]he other 'class-based animus' language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias." *Tilton,* 6 F.3d at 686.  Thus, the Court recommends that Judge Moore find Plaintiff has failed to plausibly state a claim pursuant to 42 U.S.C. § 1985 against Bateman and, therefore, deny Plaintiff's motion for leave to file the seventh claim asserted in the SAC against Bateman, and grant Bateman's motion to dismiss Plaintiff's first claim against Bateman

asserted in the FAC.

As set forth above, when all federal claims have been dismissed, the court usually should decline to exercise jurisdiction over any remaining state claims.  *See Smith*, 149 F.3d at 1156. Plaintiff's seventh claim in the FAC, construed liberally, alleges civil conspiracy under state law against all Defendants, including Bateman.  This is the only state law claim asserted against Bateman in the FAC.  Therefore, this Court recommends that Judge Moore grant Bateman's motion to dismiss Plaintiff's seventh claim, without prejudice, which is asserted in the FAC.

However, to the extent that a medical negligence claim may be construed in the FAC against Bateman, this Court recommends that Judge Moore grant Bateman's motion to dismiss the claim for Plaintiff's conceded failure to file a Certificate of Review.  Colorado law provides: "[i]n every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review" declaring "[t]hat the attorney has consulted a person who has expertise in the area of the alleged negligent conduct" and "[t]hat the professional who has been consulted . . . has concluded that the filing of the claim, counterclaim, or cross claim does not lack substantial justification within the meaning of section 13-17-102(4)."  Colo. Rev. Stat. § 13 -20-602(1)(a), (3)(a)(I)-(II).  Although the statutory language refers to "plaintiff's attorney," the requirements of Colo. Rev. Stat. § 13-20-602 apply equally "to civil actions alleging negligence of licensed professionals filed by nonattorney pro se plaintiffs." *Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002); *see also Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004) (the Colorado "certificate of review requirement applies whether or not the plaintiff is represented by counsel").

Judge Moore recently addressed the necessity of filing a Certificate of Review for a claim sounding in medical malpractice, noting:

To prevail on a claim of professional negligence against a physician or other trained medical professional, a plaintiff must establish that the professional failed to conform to the standard of care ordinarily possessed and exercised by members of the same school of medicine practiced by that defendant. Further, unless the alleged negligence concerns subject matter within the common knowledge or experience of an ordinary person, both the standard of care and the defendant's failure to adhere to that standard must be established by expert opinion testimony of a qualified expert witness.

*Tracz ex rel. Tracz v. Charter Centennial Peaks Behavioral Health Sys., Inc.*, 9 P.3d 1168, 1173 (Colo. App. 2000). "It is only in unusual circumstances that a medical malpractice claim can be proven without the presentation of expert medical opinion to establish the proper standard of care against which the professional's conduct is to be measured." *Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 627 (Colo. 1999) (permitting a medical negligence claim to move forward on a res ipsa loquiur theory); *see also McCafferty v. Musat*, 817 P.2d 1039, 1044 (Colo. App. 1990) ("Except in clear and palpable cases, expert testimony is necessary to establish the standards of acceptable professional conduct[.]"). Moreover, in a claim against a licensed professional, even if that professional is not strictly practicing the profession for which she has a license (e.g., medicine), the plaintiff is statutorily required  to file a certificate of review, which

applies to all claims against licensed professionals wherein expert testimony is required to establish the scope of the professional's duty or the failure of the professional to reasonably conduct himself or herself in compliance with the responsibilities inherent in the assumption of the duty.

*Martinez v. Badis*, 842 P.2d 245, 252 (Colo. 1992) (citing Colo. Rev. Stat. § 13-20-602 (requiring a certificate of review as condition precedent to bringing an action for damages against a licensed professional); *see also* Colo. Rev. Stat. Ann. § 13-20-601 ("[T]he certificate of review requirement should be utilized in civil actions for negligence brought against those professionals who are licensed by this state to practice a particular profession and regarding whom expert testimony would be necessary to establish a prima facie case.").

*Gonzales v. Corr. Health Partners, LLC*, No. 14-cv-03084-RM, 2019 WL 2173833, at *11 (D. Colo.

May 20, 2019).  Here, Plaintiff's allegations may be construed as asserting that Bateman breached

a duty of care when he ignored Plaintiff's calm appearance and coherent statements and "held"

Plaintiff for five hours for a mental health evaluation.  To demonstrate that Bateman's conduct fell

below any medical or, here, psychiatric, standard of care, the Plaintiff would need to retain an expert

to testify as to Bateman's alleged negligence.  Plaintiff neither alleges nor argues that the alleged

negligence concerns subject matter within the common knowledge or experience of an ordinary person. *See Gonzales*, 2019 WL 2173833, at *12 ("The practical necessity of expert testimony in cases like this should be clear."). Thus, any medical negligence claim against Bateman construed in the FAC should be dismissed, and any such claim construed as proposed in the SAC should be denied.

3.    *LAH's Motion to Dismiss*

Plaintiff does not specifically identify unlawful conduct by LAH in her claims for relief in the FAC, but the first (violation of 42 U.S.C. § 1985), fourth (Fourteenth Amendment violations), and seventh (civil conspiracy under state law) claims are brought against "all" Defendants, apparently including LAH.

First, as with the individual Defendants, to survive LAH's motion to dismiss her constitutional claims, Plaintiff must plausibly allege that LAH acted under color of state law pursuant to 42 U.S.C. § 1983. No party disputes that LAH is a private entity; "thus its actions are not normally subject to constitutional due process requirements." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1186 (10th Cir. 2020) (citing *Brentwood Acad.*, 531 U.S. at 295). Plaintiff alleges no *facts* supporting a claim that LAH worked with, was coerced by, or essentially functioned as a government entity or official. Rather, Plaintiff simply argues that LAH is culpable based on the actions of Bateman and Hirsch (Resp. at 3-8) and contends that "Littleton Hospital holds vicarious liability of its medical personnel" (*id.* at 7).[11]   Even if it were proper to impute individuals' actions to an entity for analysis of constitutional claims, as set forth above, Plaintiff has not alleged sufficient facts demonstrating that LAH, through Bateman and/or Hirsch, meets the nexus/compulsion test, symbiotic relationship test, public function test, or joint action test. *See Farr*

---

[11]The theory of "vicarious liability" is inapplicable to claims pursuant to 42 U.S.C. § 1983. *Iqbal*, 556 U.S. at 676.

28

*v. Davis*, 733 F. App'x 961, 962 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1291, 203 L. Ed. 2d 417 (2019) ("In determining whether a nominally private person or entity acted under color of state law, we employ one of four tests: (1) nexus, (2) symbiotic relationship, (3) joint action, or (4) public function.") (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995)).

Plaintiff also argues that "Littleton Adventist Hospital, through its customs, practices, acts, or omissions failed to properly supervise Devin Bateman and Timothy Hirsch" (Resp. at 6) and "LAH fosters unlawful and unconstitutional customs and practices, negligent hiring, and failure to supervise in violation of constitutional rights" (*id.* at 8). While these arguments may be relevant to an analysis of the merits of Plaintiff's fourth claim for constitutional violations, they are not persuasive as to whether LAH acted under color of state law. Thus, the Court recommends that Judge Moore grant LAH's motion to dismiss Plaintiff's fourth claim asserted in the FAC.

In the SAC, Plaintiff seeks to add a Defendant, Jillyan McKinney, LAH's Chief Executive Officer. *See* SAC, ECF 107-1. In her proposed fourth claim for relief asserting a Fourth Amendment violation, Plaintiff alleges that "LAH accepted [Deputy Jann's] authority, by policy of the organization and its CEO, currently Jillyan McKinney." *Id.* at 47. Plaintiff also mentions McKinney in her sixth claim for relief pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (municipal liability under 42 U.S.C. § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature . . . ."), alleging "Leadership at LAH, namely Jillyan McKinney, promulgates the employment and contracted employment of Devin Bateman and Timothy Hirsch, and others whose conduct to hold Plaintiff in custody on authority from Jann and JCSJS and depict and diagnose her as mentally ill is collusive." *Id.* at 56. To the extent that these allegations may be construed as supportive of Plaintiff's theory that LAH acted under color of state law, the Court finds the allegations conclusory and not supported

by any alleged facts.   Accordingly, this Court recommends that Judge Moore find Plaintiff's proposed fourth and sixth claims alleging constitutional violations against LAH/McKinney are futile and deny Plaintiff's motion to add the claims against LAH/McKinney.

With respect to Plaintiff's § 1985 conspiracy claim asserted in the FAC (first claim for relief), the Court's finding that Plaintiff has failed to allege racial or other class-based discrimination against LAH applies.  *See Phan v. Colorado Legal Servs.*, 769 F. App'x 520, 526 (10th Cir.), *cert. denied sub nom. Vu Phan v. Colorado Legal Servs.*, 140 S. Ct. 201, 205 L. Ed. 2d 173 (2019) ("Section 1985 concerns suits against those who conspire to deprive others of their civil rights and, as such, requires 'that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 104-05 (1971)).  Plaintiff's failure to allege such animus in the SAC is also fatal to her seventh claim for relief alleging conspiracy to deny First Amendment rights and to her tenth claim for relief alleging a "civil conspiracy to promote unlawful customs and practices, negligent hiring, [and] failure to supervise," both pursuant to 42 U.S.C. § 1985.  Therefore, the Court recommends that Judge Moore grant LAH's motion to dismiss Plaintiff's first claim asserted in the FAC, and deny Plaintiff's motion to amend, finding Plaintiff's proposed amended seventh and tenth claims against LAH/McKinney in the SAC to be futile.

The last claim Plaintiff raises in her FAC against LAH is her seventh claim for civil conspiracy under state law.  As with the individual Defendants, the Court finds that the District Court should decline to exercise supplemental jurisdiction over this claim and grant LAH's motion to dismiss the seventh claim without prejudice.

To the extent that the FAC or SAC may be construed as asserting medical negligence claims against LAH, this Court recommends that they be dismissed or denied as futile.  First, as set forth

above, the Plaintiff has conceded that she has failed to file a required Certificate of Review.  Second, in Colorado, the corporate practice of medicine doctrine is a common law principle recognizing that it is impossible for an entity to perform medical actions or be licensed to practice medicine.  *Estate of Kellner v. Schultz*, 937 F. Supp. 2d 1319, 1325–26 (D. Colo. 2013) (citing *Harper ex rel. Al–Hamim v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 275 (Colo. App. 2006) and Colo. Rev. Stat. § 12–36–134).  "Under this doctrine, a corporation that employs a physician may not interfere with the physician's independent medical judgment, and accordingly a corporate entity cannot be held vicariously liable for the negligent acts of their physician employees."  *Id.* at 1326.  Accordingly, the Court recommends that Judge Moore grant LAH's motion to dismiss any medical negligence claim construed in the FAC, and deny Plaintiff's motion to amend to the extent that the proposed SAC may be construed as alleging medical negligence against LAH.

### C.   Plaintiff's Proposed Twelfth Claim for Relief

In the SAC, Plaintiff seeks the addition of a twelfth claim for relief alleging "outrageous conduct" against all Defendants.  SAC, ECF 107-1 at 72.  Under Colorado law, the elements of the tort of outrageous conduct (also known as "intentional infliction of emotional distress") are: (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) causing the plaintiff severe emotional distress.  *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1043 (D. Colo. 2012) (citing *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994)).

The Court has excepted this new claim from its findings of good cause and no undue delay (*see supra* at 9 n.1), particularly because the claim does not appear to be based on any "new" information nor does it seem to "clarify" any existing allegations or claims.  For the discovery of new information to constitute an adequate explanation for an untimely amendment, the information

must form the basis of the proposed claims. *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 669 (D. Colo. 2001) ("[T]he plaintiff should be allowed to make the requested amendments, [because] the plaintiff has pointed to new information recently discovered or disclosed which forms the bases for the additional claims."); *see also Sullivan v. Equifax Info. Servs., LLC*, No. 14–cv–02377–CMA–KLM, 2015 WL 4480899, at *4 (D. Colo. July 23, 2015) ("Filing [a motion to amend] the day after learning new information that forms the basis for the proposed amendments does not constitute undue delay.").

Here, the outrageous conduct claim appears to involve information already in the Plaintiff's possession when she filed the FAC and, perhaps, even the original complaint. In fact, Plaintiff alleged outrageous conduct claims in both the FAC (*see* ECF 82 at 81) and original complaint (ECF 1 at 31) against the Jefferson County Defendants and, thus, was aware of such claim and whether her allegations might support it. Because Plaintiff has failed to demonstrate good cause to extend the deadline for amendment of pleadings to assert her claim for outrageous conduct against all Defendants, this Court recommends that Judge Moore deny Plaintiff's motion to amend to add the twelfth claim for relief.

## IV.  Conclusion

Rule 15(a) requires that courts "freely give leave when justice so requires." The Supreme Court has stated, "[i]f the underlying facts or circumstances relied upon by a [claimant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim in the merits." *Foman*, 371 U.S. at 182. Here, the Court finds that Plaintiff's proposed amendments (except the twelfth claim for relief) are timely, will not prejudice the Defendants, and are not made in bad faith. However, as demonstrated by the motions to dismiss filed by the Medical Defendants, certain of the Plaintiff's amendments are futile and should not be permitted.

Accordingly, this Court respectfully recommends that Judge Moore **grant in part and deny in part** Plaintiff's Motion for Leave to Amend First Amended Complaint [underline]filed February 18, 2020; ECF 107[/underline]], deny Plaintiff leave to assert the proposed first, third, fourth, seventh, and twelfth claims against Hirsch, Bateman, LAH, and McKinney, and deny Plaintiff leave to assert the tenth claim against LAH/McKinney, but grant Plaintiff leave to file the proposed Second Amended Complaint, in which she may assert all proposed claims against Defendants Jefferson County Sheriff Jeff Schrader in his official capacity, Cody Jann, Sheryl Ditton, and Jefferson County Public Library.

In light of this recommendation, the Court also recommends that the County Defendants' Motion to Dismiss First Amended Complaint [filed December 16, 2019; ECF 92] be **denied without prejudice**, and with leave to refile in response to the Second Amended Complaint, if Defendants so choose. *See Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) ("An amended complaint supersedes the original complaint and renders the original complaint of no legal effect.") (citing *Miller v. Glanz*, 948 F. 2d 1562, 1565 (10th Cir. 1991)); *see also Robinson v. Dean Foods Co.*, No. 08-cv-01186-REB-CBS, 2009 WL 723329, at *4 (D. Colo. Mar. 18, 2009) (citation omitted) ("Generally, when an amended complaint is filed, the previous complaint is wiped out and the operative complaint is the most recently filed version.").

Finally, the Court recommends that Judge Moore **grant** Timothy Hirsch, P.A.'s Motion to Dismiss Plaintiff's First Amended Complaint [filed December 11, 2019; ECF 89], Devin C. Bateman, M.D.'s Motion to Dismiss First Amended Complaint [filed December 16, 2019; ECF 93], and Littleton Adventist Hospital's Motion to Dismiss First Amended Complaint [filed December 16, 2019; ECF 94], and dismiss Plaintiff's first, fourth, and fifth claims with prejudice and dismiss Plaintiff's seventh claims without prejudice against the Medical Defendants, all of which are asserted in the FAC.

Respectfully submitted this 16th day of April, 2020.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge