IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:19-cv-02132-RM-MEH

DEBRA CARROLL,

    Plaintiff,

v.

JEFFERSON COUNTY SHERIFF JEFF SCHRADER, in his official capacity,
DEPUTY CODY JANN, in his individual and official capacities,
SHERYL DITTON, in her individual and official capacities,
JEFFERSON COUNTY PUBLIC LIBRARY,

    Defendants.

---

## ORDER

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Michael E. Hegarty (ECF No. 171) to grant Defendants' Motion to Dismiss (ECF No. 153). Plaintiff has filed an objection to the magistrate judge's recommendation (ECF No. 172). Defendants have filed a response to Plaintiff's objection (ECF No. 173) and Plaintiff has filed a reply (ECF No. 174). For the reasons stated below, the Court overrules Plaintiff's objection and accepts and adopts the recommendation, which is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

**I.    LEGAL STANDARDS**

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir.

1996). "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this restriction are "(1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Id.* (quotation marks and citations omitted). "Mere legal conclusions and factual allegations that contradict such . . . properly considered document[s] are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). Thus, "if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc. v. NBC*

*Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

Plaintiff proceeds pro se; thus, the Court liberally construes her pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court does not act as her advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II.   BACKGROUND

The background facts are taken from Plaintiff's second amended complaint and the documents referenced therein (ECF No. 148). On July 29, 2017, Plaintiff was allegedly assaulted by an unknown female assailant while she was engaged in some mild political activism outside the Jefferson County Public Library. Following the attack, the assailant fled the scene through the library as Plaintiff called 9-1-1 to report the incident.

Despite the 9-1-1 operator advising Plaintiff to remain outside until officers arrived, Plaintiff pursued her assailant inside the library to thwart her escape. Upon entering, Plaintiff gave her phone to the library manager, Defendant Sheryl Ditton, so she could provide information to the operator regarding the assault. Plaintiff then proceeded to canvass the library in search of the assailant with Ms. Ditton in tow. Their search, however, was unavailing.

Plaintiff then went back outside and approached Defendant Deputy Jann, one of the responding officers, to provide her account of the assault. But before Plaintiff could share her narrative with Deputy Jann, he began screaming at her to stop recording their interaction and then proceeded to lunge at her, knocking her purse and phone out of her hands, before finally restraining her on the ground. Deputy Jann then picked her up and pushed her backwards into a window and then down to her knees, dragging her over a metal divider. Deputy Gist, another responding officer, then handcuffed Plaintiff. Plaintiff alleges that the take down resulted in injuries to her face, right shoulder, right knee, neck, and wrists.

The incident reports referenced in the second amended complaint paint a different picture.

Ms. Ditton reported Plaintiff entering the library and discussing conspiracy theories with herself and other patrons. Ms. Ditton suggested Plaintiff go outside as to not further disturb library patrons, to which she obliged. A few minutes later, Ms. Ditton peered out the window and saw Plaintiff chatting with some patrons but at no point did she see anyone touch her. Ms. Ditton lingered near the door of the library to ensure patrons were not being disturbed, during which time she saw Plaintiff make a phone call. Ms. Ditton's report indicates that while Plaintiff was on the phone, she re-entered the library and handed her the phone to speak with the 9-1-1 operator. Ms. Ditton then followed Plaintiff as she scavenged the library for the assailant before asking her again to go back outside. At that point, Ms. Ditton confirmed with the dispatcher that officers were in route and even asked her coworker to call 9-1-1 to check if police were responding to the scene.

Deputy Jann reported that the dispatcher notes were very confusing, and that the caller had been rambling on the phone. When he arrived at the scene, Deputy Jann saw Plaintiff near the library door yelling something about sex trafficking. He instructed her to step away from the doorway, at which time Plaintiff began yelling at him and even raised her arms toward his face. Deputy Jann told Plaintiff to remain calm and to back away. Plaintiff ignored his requests. Deputy Jann then decided to physically restrain Plaintiff. Plaintiff was eventually handcuffed and transported to Little Adventist Hospital for a mental evaluation. Deputy Gist's report confirms these events.

At the hospital, Deputy Jann completed an Emergency Illness Report and Application in which he explains that Plaintiff appeared mentally ill, and, as a result, posed an imminent danger

to herself.  In reaching this determination, Deputy Jann wrote that Plaintiff arrived at the library yelling at staff and patrons regarding daycare, the NFL, dolls, and sex trafficking.

Hospital evaluation notes Plaintiff referenced in her second amended complaint indicate that she was acting delusional and not making sense, and that she seemed very confused when asked about the library incident.  Further, those notes reported no observable physical injuries and explained that Plaintiff did not report any current injures during her evaluation.  Plaintiff was discharged from the hospital later that day.  Almost two years later, this suit followed.

Plaintiff alleges that (1) she was unlawfully detained by use of excessive force in violation of her Fourth Amendment rights, (2) Deputy Jann and Ms. Ditton conspired against her in retaliation against her protected speech activity in violation of her First Amendment rights, and (3) various recordings of the incident were altered or destroyed in violation of her Fourteenth Amendment rights.  (ECF No. 148.)  Defendants filed a motion to dismiss the second amended complaint (ECF No. 153) which was referred to the magistrate judge.  The magistrate judge agreed with Defendants that Plaintiff failed to state a claim and recommended that the complaint be dismissed.  (ECF No. 171.)  Plaintiff's objection followed.  (EFC No. 172.)

Plaintiff's objection to the recommendation is not the model of clarity; however, the Court gathers Plaintiff argues that the magistrate judge (1) improperly relied on falsified reports in reaching his recommendation concerning her First, Fourth, and Fourteenth Amendment claims, and (2) incorrectly recommended that Defendants are entitled to qualified immunity.

III. **DISCUSSION**

With respect to the findings and conclusions of the magistrate judge's recommendation that Plaintiff did not object to, dismissal of her official capacity claims, conspiracy claims, and state law tort claims, the Court finds the magistrate judge's analysis was thorough and sound and

5

discerns no material errors on the face of the record. As for the findings to which Plaintiff objects, after reviewing the magistrate judge's recommendation, the Court agrees with the magistrate judge's legal analysis and findings.

The magistrate judge properly evaluated the sufficiency of the allegations contained in the second amended complaint in determining that Plaintiff failed to state a claim upon which relief can be granted. Throughout the operative complaint, Plaintiff makes conclusory allegations without any factual support. In fact, a majority of those allegations are contradicted by reports referenced therein and included as an exhibit.

Plaintiff's objection is long with a detailed recitation of her allegations, but at no point does it direct the Court's attention to specific factual allegations omitted from the magistrate judge's recommendation which are sufficient to state a claim for relief. Further, contrary to Plaintiff's argument that the magistrate judge improperly drew inferences in Defendants' favor, the complaint pleads conclusory allegations precluding inferences to be drawn at all. For example, Plaintiff claims that Deputy Jann and Ms. Ditton falsified their reports to protect themselves. Plaintiff asserts that because reports filed by Deputy Jann and Ms. Ditton contradict allegations in her second amendment complaint, the inference to be drawn in her favor is that the reports were falsified. That plainly is not so. Plaintiff fails to plead a plausible claim for relief based on these types of conclusory statements.

Turning to the magistrate judge's legal analysis of Plaintiff's Fourth Amendment claim, the Court agrees that Defendants are entitled to dismissal of the claim based on qualified immunity. Plaintiff reasserts the same arguments contained in her response to the motion to dismiss previously considered by the magistrate judge in his recommendation that Defendants waived their qualified immunity or that it does not apply because Defendants violated her

constitutional rights in her objection to the recommendation.

To overcome Defendants' qualified immunity defense, Plaintiff must show that (1) Defendants' conduct violated a constitutional right, and (2) it was clearly established at the time of the violation that such conduct constituted a violation of that right. *See Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016).

Here, the magistrate judge recommended that Defendants are entitled to qualified immunity because Plaintiff failed to meet the first prong of this test. Facts alleged in the second amended complaint do not indicate that Deputy Jann used unreasonable force in restraining Plaintiff after she yelled at him and raised her arms. Nor do they indicate Deputy Jann lacked probable cause to initiate a mental health hold on Plaintiff based on her conduct at the library. Plaintiff posed a threat to herself and Deputy Jann through her strange and aggressive behavior and refusal to respond to commands. Thus, from the prospective of a reasonable officer the force used was appropriate. Accordingly, Plaintiff fails to overcome Defendants' qualified immunity defense with respect to the Fourth Amendment claim.

Turning next to the magistrate judge's legal analysis of Plaintiff's First Amendment claim, the Court agrees that Plaintiff has failed to allege facts which indicate the mental health hold was in retaliation for her free speech. To state a First Amendment retaliation claim, Plaintiff must show that: (1) she was engaged in constitutionally protected activity; (2) defendant's actions caused to chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's adverse action was substantially motivated as a response to her exercise of constitutionally protected conduct. *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018).

Here, the recommendation found that Plaintiff's allegations fail to satisfy the third

7

requirement for a retaliation claim: that Deputy Jann's action was substantially motivated as a response to Plaintiff's exercise of her constitutionally protected conduct. In her objection, Plaintiff explains that it is more than conclusory that her exercise of political speech motived Defendants' adverse action as there was no other reason to attack and punish her. However, Plaintiff has failed to establish a connection between her free speech activities and the mental health hold. Moreover, Plaintiff does not allege facts indicating that Ms. Ditton called law enforcement in response to her political activism or that she was taken to the hospital because of the exercise of her protected speech. Rather, the operative complaint indicates that Deputy Jann initiated the medical health evaluation based on Plaintiff's mental health. In all, Plaintiff fails to plead facts which state a plausible claim for First Amendment retaliation.

Plaintiff's due process and spoilation claim fares no better. Plaintiff makes numerous conclusory allegations concerning spoilation of evidence after the incident giving rise to her due process rights being violated, yet provides no facts demonstrating how the subsequent spoliation acts contributed to her being deprived of legal process. To state a claim for deprivation of her right to due process, Plaintiff must show that (1) she "possess a protected interest such that the due process protections were applicable" and (2) she was not "afforded an appropriate level of process." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994).

Here, Plaintiff fails to demonstrate how falsified reports and altered 9-1-1 recordings caused the alleged deprivation of her due process rights. Even if reports were doctored, Deputy Jann still had probable cause for initiating a mental health hold. And even if a recording was altered, there was no ensuing legal process to which she was not afforded. It is unclear how the allegedly altered evidence could have contributed to Deputy Jann determining to take her into emergency medical custody for a mental health evaluation. Moreover, Plaintiff fails to plead

8

facts which show the spoilation could have deprived her of her protected liberty interest. Thus, Plaintiff's due process and spoilation claim fails to allege a plausible right to relief.

## IV. CONCLUSION

Based on the forgoing, the Court **ORDERS** as follows:

1. Plaintiff's objection (ECF No. 172) is OVERRULED;
2. The magistrate judge's Recommendation (ECF No. 171) is ACCEPTED and ADOPTED;
3. Defendant's Motion to Dismiss (ECF No. 153) is GRANTED;
4. Plaintiff's second amended complaint is DISMISSED with PREJUDICE; and
5. The Clerk is directed to close this case.

DATED this 23rd day of June, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge